# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JANE B. GRIGGS, as Personal Representative of the Estate of Richard O. Bertschinger, Sr., deceased, | )<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | Case No. CIV-17-1187-SLP |
| THE VANGUARD GROUP, INC., and VANGUARD MARKETING CORP., | )<br>)<br>)<br>) | |
| Defendants. | ) | |

## **O R D E R**

Before the Court is Plaintiff's Motion to Compel Discovery Responses [Doc. No. 47]. It is at issue. *See* Resp., Doc. No. 65; Reply, Doc. No. 69.[1] After Defendants removed this case to this Court, they requested that Plaintiff's claims against Vanguard Marketing Corp. be compelled to Financial Industry Regulatory Authority ("FINRA") arbitration and that Plaintiff's claims against Vanguard Group, Inc. be dismissed. Plaintiff then put the "making" of the alleged arbitration agreements at issue, so the Court authorized limited-scope discovery in advance of the determination required by 9 U.S.C. § 4. *See* Order of Oct. 31, 2018, Doc. No. 27. The only question on which discovery has been authorized in this case is whether Mr. Bertschinger lacked mental capacity to enter into the arbitration

---

[1] Plaintiff also filed a notice correcting a statement made in her motion. *See* Doc. No. 52.

clauses at issue—which were executed by Mr. Bertschinger on August 11, 1999 and on September 4, 2001.[2] *See* Doc. Nos. 10-2, 10-4.

## I. Relevant discovery standard

Federal Rule of Civil Procedure 26(b)(1) applies to Plaintiffs' motion, and it provides in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

"When requested discovery appears relevant, the party objecting to production has the burden of establishing the lack of relevance by demonstrating that the request falls outside the scope set forth in Rule 26(b)(1), or that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Shotts v. Geico Gen. Ins. Co.*, No. CIV-16-1266-R, 2017 WL 4681797, at *1 (W.D. Okla. Oct. 17, 2017) (citation omitted).

---

[2] Defendants have asserted that Mr. Bertschinger "again acknowledged his obligation to arbitrate any dispute in May 2009" (Mot. to Compel Arbitration 7 n.8, Doc. No. 10), but indicate that they will not rely on the "May 2009 reauthorization of the 2001 Margin Agreement" in seeking to have arbitration compelled because it "has no bearing on whether [Plaintiff] is obligated to arbitrate." Resp. 8 n.3, Doc. No. 65. Based on Defendants' current assertion, the Court does not intend to consider the May 2009 document in making its decision of whether to compel arbitration. Accordingly, the Court will not compel Defendants' production of additional discovery materials based on the May 2009 document because whether Mr. Bertschinger lacked mental capacity in May 2009 is not relevant to the limited issues in this case at this time.

2

## II. Discussion and analysis

Mental capacity to contract is evaluated as of the date of the contract's execution. *See Evans v. First Nat'l Bank of Stillwater*, 146 P.2d 111, 113 (Okla. 1944) ("[T]he test of the capacity to make a contract is whether the party had the ability to comprehend in a reasonable manner the nature and effect of the act in which he engaged and the business he transacted." (quotation marks and citation omitted) (citing *Charley v. Norvell*, 221 P. 255 (Okla. 1924))); *cf. Charley*, 221 P. at 257 ("It must be borne in mind that at the time the release was executed in the case at bar the plaintiff was of full age, and the presumption of contractual capacity cannot be overthrown merely . . . by the fact that a short time after the release was executed a guardian was appointed by the county court on the ground of improvidence."). This time-of-transaction evaluation is applicable regardless of whether New York, Oklahoma, or Pennsylvania law applies to the issue of mental capacity.[3] *See Cardinal v. Kindred Healthcare, Inc.*, 155 A.3d 46, 50 (Pa. Super. Ct. 2017) ("Where mental capacity to execute an instrument is at issue, the real question is the condition of the person at the very time he executed the instrument in question." (quotation marks omitted) (quoting *Estate of McGovern v. Pa. State Emps. Ret. Bd.*, 517 A.2d 523 (Pa. 1986), *overruling on other grounds recognized by Vine v. Pa. State Emps. Ret. Bd.*, 9 A.3d 1150 (Pa. 2010))); *Sears v. First Pioneer Farm Credit*, 850 N.Y.S.2d 219, 222 (N.Y. App. Div. 2007) ("[T]o prevail, plaintiffs had to demonstrate that [the alleged-to-be-

---

[3] The laws of these states are potentially applicable to issues in this case. The Court need not, and does not, engage in a choice-of-laws analysis in order to settle the instant discovery dispute. Neither Plaintiff nor Defendants urge the application of Pennsylvania law to the issues addressed herein, so the Court does not address Pennsylvania law any further.

incapacitated person's] mind was so affected as to render him wholly and absolutely incompetent to comprehend and understand the nature of the transaction and, further, that such incompetency/incapacity existed when he executed the loan documents . . . ." (quotation marks and citations omitted)).

Plaintiff asserts that the time period relevant to the issue of mental capacity is broader, at least if New York law applies. Pointing to *Ortelere v. Teachers' Retirement Board*, Plaintiff stresses that case's reliance on the Restatement (Second) of Contracts and part of its test for a voidable contract: "(1) A person incurs only voidable contractual duties by entering into a transaction if by reason of mental illness or defect . . . (b) he is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition." 25 N.Y.2d 196, 204 (1969) (quotation marks omitted).[4] Under this standard, Plaintiff asserts that Defendants' knowledge of Mr. Bertschinger's capacity

---

[4] This rule is now located at Restatement (Second) of Contracts § 15 (Am. Law Inst. 1981), which states in full:

> (1) A person incurs only voidable contractual duties by entering into a transaction if by reason of mental illness or defect
>
>     (a) he is unable to understand in a reasonable manner the nature and consequences of the transaction, or
>
>     (b) he is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition.
>
> (2) Where the contract is made on fair terms and the other party is without knowledge of the mental illness or defect, the power of avoidance under Subsection (1) terminates to the extent that the contract has been so performed in whole or in part or the circumstances have so changed that avoidance would be unjust. In such a case a court may grant relief as justice requires.

4

is relevant, opening up the period before (and, according to Plaintiff, the period after) Mr. Bertschinger executed the August 1999 and September 2001 documents to discovery.

Without reaching the issue of what State's laws apply, the Court agrees with Plaintiff that Defendants' knowledge of Mr. Bertschinger's mental capacity to enter into the arbitration clauses at issue in August 1999 and September 2001 is relevant and is likely to be revealed by communications between Defendants and Mr. Bertschinger, at least for the periods before the agreements were executed—as well as, as previously determined, for the period of time extending to three months after the latter of agreements at issue in this case: December 4, 2001. *See* Order of May 7, 2019, at 6, Doc. No. 45. That is, Defendants' knowledge in August 1999 and September 2001—based on their prior interactions with Mr. Bertschinger—is relevant regardless of whether Oklahoma or New York law applies.

However, the Court does not see the relevance—as to the limited issues on which discovery has been authorized—of communications between Defendants and Mr. Bertschinger that took place after December 4, 2001.[5] Such communications do not shed light on Mr. Bertschinger's mental capacity in August 1999 or September 2001; nor do they show what knowledge of Mr. Bertschinger's mental capacity Defendants had during those same prior periods. In light of these general determinations, the Court turns to Plaintiff's individual discovery requests:

---

[5] The Court's determination regarding after-agreement-execution communications might be different if, e.g., Defendants were arguing sufficient performance of an agreement such that avoidance was no longer possible or another qualifying circumstance. *See* Restatement (Second) of Contracts § 15(2). Defendants make no such arguments in this case.

## A. Plaintiff's Interrogatory No. 1 and Request for Production No. 1

Plaintiff seeks recordings of communications between Mr. Bertschinger and Defendants' employees or representatives from January 1, 1998, through October 4, 2016 (Mr. Bertschinger's date of death), along with "identification of the software requirements for accessing such data, and the manner of storage and backup of all such data." Pl.'s Interrog. No. 1, Doc. No. 47-1. The Court is inclined to grant Plaintiff's request for production of communications—but only as to communications had from January 1, 1998, through December 4, 2001 (three months after Mr. Bertschinger executed the second agreement at issue in this case). As Defendants have indicated that they do not have any recordings from before November 2010—due to their document destruction policy that was in place prior to them being served with this lawsuit—no recordings exist for the Court to compel production of. Plaintiff's request is therefore denied.

As to Plaintiff's request for Defendants' audio recording policies and data storage policies, the Court does not see any relevance between them and the issues on which discovery has been authorized. Even if Defendants (i) had policies in place that they violated (as Plaintiff seems to hypothesize) or (ii) did not have policies in place that they should have had under FINRA regulations, such violations do not reveal any relevant information regarding Mr. Bertschinger's mental capacity at the relevant times, or even Defendants' knowledge about his mental capacity at such times.[6] Plaintiff's request is therefore denied.

---

[6] The Court's ruling regarding Plaintiff's request for software and data policies applies to all of Plaintiffs' discovery requests in which she requests such policies.

### B. Plaintiff's Interrogatory Nos. 2-3 and Request for Production Nos. 2-3

Plaintiff requests production of "notes, diaries, memoranda, or other documentation of any conversations, telephone calls, or other communications" between Mr. Bertschinger and Defendants' employees or representatives from January 1, 1998, through October 4, 2016. Pl.'s Interrog. No. 2, Doc. No. 47-1. Plaintiff also seeks "all written communications" between Mr. Bertschinger and Defendants' employees or representatives from the same period. Pl.'s Interrog. No. 3, Doc. No. 47-1. Plaintiff asserts that all communications between Mr. Bertschinger and Defendants are relevant because "records of later communications . . . and [Defendants'] records of later perceptions regarding [their] communications [with Mr. Bertschinger] could show what [Defendants] knew or should have known during the time [period from which they] have no records." Mot. 8, Doc. No. 47.

The Court agrees that Defendants should produce communications or documentation of communications between Mr. Bertschinger and Defendants' employees or representatives created from January 1, 1998, through December 4, 2001, as well as any later-in-time records explicitly referencing communications that occurred during the period of January 1, 1998, through December 4, 2001 (to the extent any exist which have not been produced previously). The Court anticipates that Defendant will be able to search its written records using terms agreed to between Plaintiff's and Defendants' counsels to determine whether any such later-in-time references exist. In compelling production of limited later-in-time records, the Court is not ordering Defendant to review or produce the

7

194 audio records from during or after November 2010; the burden or reviewing all such audio recordings outweighs any benefit from the slim likelihood of references therein to Mr. Bertschinger's capacity more than nine years prior. *See* Fed. R. Civ. P. 26(b)(1).

Plaintiff's argument for production of *all* communications or records from the post-December-2011 period based on the chance that some record could theoretically reference an earlier-in-time period is too tenuous to use as a basis to compel production of additional documents except to the limited extent indicated immediately *supra*. Instead, it is closer to the proverbial fishing expedition based on nothing more than a hunch and potential, which is insufficient to pull the requests within the realm of appropriate proportionality per Rule 26(b)(1). *See Grynberg .v Ivanhoe Energy, Inc.*, 490 F. App'x 86, 105 (10th Cir. 2012) (unpublished). Plaintiff's request is therefore granted in part and denied in part.

### C. Plaintiff's Interrogatory No. 4 and Request for Production No. 4

Plaintiff seeks "internal communications (i.e., between or among [Defendants'] employees, agents, or vendors) regarding Mr. Bertschinger's age, mental capacity, demeanor, hearing ability, and ability to understand information." Pl.'s Interrog. No. 4, Doc. No. 47-1. The Court agrees with Plaintiff that Defendants should produce communications or documentation of communications between Defendants' employees or representatives created from January 1, 1998, through December 4, 2001 referencing "Mr. Bertschinger's age, mental capacity, demeanor, . . . and ability to understand information." *Id.* The Court further agrees with Plaintiff that Defendant should produce any later-in-time records explicitly referencing "Mr. Bertschinger's age, mental capacity, demeanor, . . . and ability to understand information" as such abilities or characteristics existed during the

period through December 4, 2001, to the extent such records may be located by agreed-upon search terms. *See supra* Part II.B.

Plaintiff's request for internal communications, if any, regarding Mr. Bertschinger's hearing ability is denied; Plaintiff has not indicated how Mr. Bertschinger's lack of hearing ability, if any such lack of ability existed, impacted his mental capacity.

Plaintiff's request is therefore granted in part and denied in part.

### D. Plaintiff's Interrogatory Nos. 9-10 and Request for Production No. 5

Plaintiff asks for identification of "every . . . representative, agent, or employee [of Defendants] who had telephonic communication with Mr. Bertschinger from January 1, 1998, through his death on October 4, 2016." Pl.'s Interrog. No. 9, Doc. No. 47-1. Plaintiff further requests "[a]ll data regarding the time, date, and duration of all telephone communications" between Mr. Bertschinger and Defendants' employees or representatives from the same period. Pl.'s Req. for Produc. No. 5, Doc. No. 47-1. The Court is inclined to grant Plaintiff's request for production of such information—but only as to those persons engaging in communications had from January 1, 1998, through December 4, 2001. As Defendants have indicated that they do not have any call data for the period prior to 2003, no information exists for the Court to compel production of. Plaintiff's request is therefore denied.

Plaintiff also requests identification of "every Registered Representative . . . assigned to Mr. Bertschinger's accounts from 1998 until Mr. Bertschinger's death in October of 2016." Pl.'s Interrog. No. 10, Doc. No. 47-1. Defendants have not indicated

9

that they lack such information for the period of January 1, 1998, through December 4, 2001 (in contrast to how they indicated that they lack information regarding those persons who communicated with Mr. Bertschinger during the same period). The Court agrees with Plaintiff that this information is relevant to Plaintiff's ability to determine Mr. Bertschinger's mental capacity, and the Court thereby compels Defendants' production of information responsive to Plaintiff's Interrogatory No. 10 for the period of January 1, 1998, through December 4, 2001. Plaintiff's request is therefore granted in part and denied in part.[7]

### E. Plaintiff's Interrogatory No. 8 and Request for Production No. 7

Plaintiff seeks Defendants' "supervisory manuals, policies, procedures, and qualifications . . . [which were] in place on . . . August 4, 1999 through August 16, 1999 [or in] September 4, 2001, or [in] May 2009, regarding . . . (i) possible diminished capacity; (ii) level of understanding of risks; (iii) level of understanding of documents, instruments, or agreements; [or] (iv) engaging with and providing services to elderly persons, persons with diminished capacity, vulnerable adults, or persons who require assistance in handling their financial affairs." Pl.'s Interrog. No. 8, Doc. No. 47-1. As indicated *supra*, even if Defendants violated their own policies or policies that they should have had in place per

---

[7] To the extent Plaintiff intends to depose any persons identified by Defendants in their answer to Interrogatory No. 10 (if any such persons exist), the Court does not rule on the appropriateness of a deposition, which is not before the Court at this time. The Court does not find Plaintiff's request regarding Interrogatory No. 10 moot because it cannot determine from the parties' filings whether Defendants have identified registered representatives, if any, for (i) only August 1999 and September 2001 (which is insufficient) or (ii) the entire period of January 1998 through December 2001 (which is sufficient).

FINRA regulations, such actions would not reveal any relevant information regarding Mr. Bertschinger's mental capacity or what Defendants knew about the same during relevant periods. These discovery requests are merits-based requests upon which the Court has not authorized discovery at this time.

Plaintiff also argues that these documents, and others she has requested from Defendants, are necessary to combat four propositions urged by Defendants—(i) "Mr. Bertschinger was a savvy and skilled investor," (ii) his "brokerage account was entirely self-directed," (iii) "Mr. Bertschinger approached [Defendants] on his own volition and opened his accounts," and (iv) "Mr. Bertschinger initiated all contacts with [Defendants], made all of the investments decisions in his account, and directed all of [his] trading activity." Reply 3-4, Doc. No. 69 (quotation marks omitted). As the Court does not see how any of these assertions by Defendants is relevant to Mr. Bertschinger's mental capacity, the Court likewise does not see how documents allowing Plaintiff to combat Defendants' assertions are relevant at this time. Plaintiff's request is therefore denied.

### F. Plaintiff's Interrogatory Nos. 11-12 and Request for Production No. 8

Plaintiff asks for identification of those "trades and transactions (including margin transactions) in Mr. Bertschinger's accounts prompted review by [Defendants] for purposes of compliance, quality control, performance evaluation, or any other measure used by [Defendants during certain periods of time]," as well as "all notices, reports, indications, or suspicions of suspicious or unsafe activity in Mr. Bertschinger's accounts for [the same periods of time], including all actions taken upon such notice, report,

indication, or suspicion." Pl.'s Interrog. Nos. 11-12, Doc. No. 47-1. Defendants now indicate that no responsive information or documents exist, so Plaintiff's request is denied as moot.[8] *See Sithon Mar. Co. v. Holiday Mansion*, No. Civ.A.96-2262-EEO, 1998 WL 638372, at *4 (D. Kan. Sept. 14, 1998) ("Although averments made under oath may be preferable, they are not necessary to resolve every dispute regarding the existence of documents. Statements within the response [to a motion] suffice in [certain] instance[s]. . . . The signature requirement of [Rule] 11 or 26(g) provides sufficient verification for accepting the fact that the sought documents [do not] exist . . . .").

### III. Rule 37(a)(5)(A) requests for attorneys' fees and costs

Both Plaintiff (Mot. 18, Doc. No. 47) and Defendants (Resp. 25, Doc. No. 65) request that the opposing side pay their attorneys' fees and costs pursuant to Rule 37(a)(5)(A). The Court finds the parties' respective positions to be substantially justified, making no award of attorneys' fees and costs to either side appropriate. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii).

### IV. Conclusion

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel Discovery Responses [Doc. No. 47] is GRANTED IN PART and DENIED IN PART as set forth herein. Additional discovery responses or document production required by this order shall be completed by Defendants within 14 days of the filing of this Order. The respective

---

[8] Defendants do not indicate why they did not simply state the lack of responsive information or documents in responding to Plaintiff's discovery requests in the first place instead of doing so only upon the filing of a motion to compel.

requests for payment of attorneys' fees and costs made by Plaintiff and Defendants are both DENIED.

IT IS SO ORDERED this 18th day of June, 2019.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE